IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:25-CV-349-M-KS

| | | |
|---|---|---|
| ASHLEY MANUEL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM &** |
| | ) | **RECOMMENDATION** |
| FRANK BISIGNANO, Commissioner | ) | |
| of Social Security Administration,[1] | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court for judicial review pursuant to 42 U.S.C. § 405(g) of a final administrative decision denying Plaintiff's application for a period of disability and disability insurance benefits ("DIB"). The parties have fully briefed the matter pursuant to the Supplemental Rules for Social Security Actions, and this matter is ripe for decision. Having carefully reviewed the administrative record and the parties' briefs, it is recommended that the case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

## STATEMENT OF THE CASE

Plaintiff applied for DIB on December 28, 2021, with an alleged onset date of May 5, 2021. (R. 17, 211–12.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 17, 88, 98, 128.) A telephonic

---

[1] Frank Bisignano became Commissioner on May 7, 2025, and is therefore substituted as a party pursuant to Fed. R. Civ. P. 25(d).

hearing was held on June 28, 2023, before Administrative Law Judge ("ALJ") Barbara von Euler, who issued an unfavorable decision on October 31, 2023. (R. 17–78.) On December 11, 2024, the Appeals Council denied Plaintiff's request for review. (R. 1–6.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff initiated this action on February 11, 2025, seeking judicial review of the final administrative decision.

## DISCUSSION

### I.     Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence"

inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## II. Disability Determination

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

3

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). (R. 18.) As a preliminary matter, the ALJ found Plaintiff meets the insured status requirements of the Act through December 31, 2023. (R. 19.) At step one, the ALJ found Plaintiff had "not engaged in substantial gainful activity since May 5, 2021, the alleged onset date." (*Id.*) Next, the ALJ determined Plaintiff has the severe impairments of obesity, Tourette's Syndrome, depression, and anxiety. (*Id.*) She also found Plaintiff has a nonsevere thyroid abnormality. (*Id.*)

At step three, the ALJ concluded Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1." (R. 20.) The ALJ expressly considered Listings 12.04, 12.06, and 12.11. (*Id.*) The ALJ also considered Plaintiff's obesity in connection with SSR 19–2p. (*Id.*)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

> the residual functional capacity to perform a range of light work as defined in 20 C.F.R. 404.1567(b) in that she can lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently; sit for up to six hours in an eight-hour workday; and stand and/or walk for up to six hours in an eight-hour workday. She is limited to understanding, remembering, and carrying out simple and detailed instructions, can use judgment to make simple, work-related[ ] decisions, and can sustain concentration, attention, and pace sufficient to carry out simple, routine, repetitive tasks for two-hour intervals over the course of an eight-hour workday. She is limited to work in occupations that require no more than occasional contact with coworkers and supervisors and no contact with the public as an essential function of the job. She is limited to work

4

> in a low stress setting, which is defined to mean work involving: no paced production requirements, such as on an assembly line, where the worker does not control the pace of production, occasional changes in the work setting or routine, and no dealing with crisis situations as an essential function of the job.

(R. 22.) In making this assessment, the ALJ stated she considered all symptoms and the evidence (both "objective medical" and "other") based on the requirements of 20 C.F.R. § 404.1529 and SSR 16–3p and found Plaintiff's statements about her symptoms "not entirely consistent with the medical evidence and other evidence." (R. 22–23.) At step four, the ALJ concluded that Plaintiff is unable to perform any past relevant work. (R. 26.) At step five, the ALJ determined, based upon Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, namely: marker (DOT #209.587-034), mail clerk (DOT #209.687-026), and router (DOT #222.687-038). (R. 27.) The ALJ concluded that Plaintiff has not been disabled under the Act from May 5, 2021, through the date of the decision. (R. 28.)

## IV.    Plaintiff's Argument

Plaintiff contends the Commissioner erred by failing to account for the episodic nature of Plaintiff's symptoms in the RFC. (Pl.'s Br. [DE #9] at 4–9.) The Commissioner argues that substantial evidence supports the RFC because the ALJ reasonably considered the entire record and the record did not reflect a need for any additional limitations. (Comm'r's Br. [DE #12] at 5–9.)

The RFC is an administrative assessment of "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular

and continuing basis" despite impairments and related symptoms. SSR 96–8p, 1996 WL 374184, at *1 (July 2, 1996); *see also* 20 C.F.R. § 404.1545(a)(1). "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96–8p, 1996 WL 374184, at *1. In assessing an individual's RFC, the ALJ considers an individual's ability to meet the physical, mental, sensory, and other requirements of work. 20 C.F.R. § 404.1545(a)(4). It is based upon all relevant evidence, which may include the claimant's own description of limitations from alleged symptoms. SSR 96–8p, 1996 WL 374184, at *5; 20 C.F.R. § 404.1545(a)(3). If necessary, an ALJ must "explain how any material inconsistences or ambiguities in the evidence were considered and resolved." SSR 96–8p, 1996 WL 374184, at *7. In fulfilling the obligation to consider all relevant evidence, an ALJ "cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding." *Lewis v. Berryhill*, 858 F.3d 858, 869 (4th Cir. 2017) (quoting *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010)).

An ALJ must "include a narrative discussion describing how the evidence supports each conclusion" in the RFC. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Mascio*, 780 F.3d at 636). The ALJ must specifically explain how certain pieces of evidence support particular conclusions and "discuss[ ] . . . which evidence the ALJ found credible and why." *Monroe*, 826 F.3d at 189 (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)). The Fourth Circuit has interpreted this to require an ALJ to "build an accurate and logical bridge from the evidence to [her] conclusion." *Monroe*, 826 F.3d at 189 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th

6

Cir. 2000)); *see also Arakas v. Comm'r of SSA*, 983 F.3d 83, 95 (4th Cir. 2020). ALJs must explain their RFC findings regarding contested functional abilities when conducting the required function-by-function analysis. *See Dowling v. Comm'r of SSA*, 986 F.3d 377, 388–89 (4th Cir. 2021).

In this case, Plaintiff provided testimony and medical records showing that symptoms related to her Tourette's Syndrome were episodic and highly unpredictable. (R. 51, 57, 59, 359, 369, 374, 381, 384.) The ALJ discredited Plaintiff's statements concerning the severity of her symptoms, finding that treatment records do not "corroborate her testimony that she is confined to bed a couple of days a week." (R. 24.) In doing so, the ALJ failed to address the episodic nature of Plaintiff's condition.

An individual's RFC represents her ability to do sustained work-related activities on a regular and continuing basis—eight hours per day, five days per week (or the equivalent). When considering impairments that are episodic in nature or include symptoms that wax and wane, the ALJ must consider the claimant's ability to perform work-related functions on both good days and bad days. *See Shelley C. v. Comm'r of SSA*, 61 F.4th 341, 357 (4th Cir. 2023); *Desmarais v. O'Malley*, No. 7:23-CV-7-M, 2024 WL 1328200, at *7 (E.D.N.C. Feb. 6, 2024) (concluding that an ALJ erred by ignoring the "episodic nature" of a severe impairment when assessing the RFC), *M. & R. adopted*, 2024 WL 1310673 (E.D.N.C. Mar. 27, 2024). "The fact is 'people with chronic diseases can experience good and bad days' even 'under continuous treatment for it with heavy drugs. Suppose that half the time she is well

7

enough that she could work, and half the time she is not. Then she could not hold down a full-time job.'" *Shelley C.*, 61 F.4th at 357 (citation omitted) (quoting *Schink v. Comm'r of Soc. Sec.,* 935 F.3d 1245, 1267 (11th Cir. 2019)).

Here, the record contains evidence from Plaintiff, her treating medical provider, and a consultative examiner that Plaintiff's symptoms are unpredictable and could impact her ability to "maintain stable employment." (R. 50, 57, 59, 62, 63, 364, 384.) Despite this evidence, the ALJ did not include a limitation in the RFC to address the episodic nature of Plaintiff's Tourette's syndrome, nor did she explain why she did not include such a limitation. The ALJ's failure to discuss the fluctuation of Plaintiff's symptoms leaves her decision "sorely lacking in the analysis needed" to conduct meaningful judicial review. *See Mascio*, 780 F.3d at 637 (meaningful review frustrated where "ALJ concluded that [claimant] can perform certain functions" but "said nothing about [her] ability to perform them for a full workday").

To the extent the ALJ may have discredited Plaintiff's statements regarding the episodic nature of her symptoms, the ALJ mischaracterized the evidence. Specifically, the ALJ found that Plaintiff had testified "she is not able to get out of bed most days," but told the consultative examiner "she generally performs routine activities of daily living." (R. 23.) This statement does not accurately reflect Plaintiff's testimony. Rather, Plaintiff testified she is unable to get out of bed "a couple of days a week." (R. 59.) The consultative examiner noted Plaintiff "is able to perform routine [a]ctivities of [d]aily [l]iving, such as bathing, grooming, and dressing herself, most times." (R. 360.) Plaintiff's testimony to the ALJ and her statements to the

8

consultative examiner are consistent, indicating that most of the time she can perform routine activities of daily living but there are some days she cannot.

## CONCLUSION

For the reasons stated above, it is RECOMMENDED that the Commissioner's decision be REVERSED and the matter be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **March 3, 2026**, to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See* 28 U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. (May 2023).

A party that does not file written objections to the Memorandum and Recommendation by the foregoing deadline, will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, a party's

failure to file written objections by the foregoing deadline may bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation. *See Wright v. Collins*, 766 F.2d 841, 846–47 (4th Cir. 1985).

This 17th day of February 2026.

KIMBERLY A. SWANK
United States Magistrate Judge